[891 NYS2d 628]

# In the Matter of SMITH CHILDREN, Children Alleged to be Abused or Neglected. J. SMITH et al., Respondents.

Family Court, Kings County, December 11, 2009

APPEARANCES OF COUNSEL

*Maureen Wagner, Family Court Legal Services*, Brooklyn, for petitioner.

OPINION OF THE COURT

JEANETTE RUIZ, J.

Introduction

New York City Administration for Children's Services (hereinafter petitioner) filed an application for a prepetition ex parte court order seeking access to enter the home of a family subject to an ongoing child protective investigation that was commenced by a report to the State Central Registry (hereinafter SCR) on July 13, 2009. The SCR report concerned allegations of possible domestic violence occurring in the presence of the children. Thus, the issue before the court is whether the application petitioner has filed meets the requirements of Family Court Act § 1034 as amended by the State Legislature in 2006.

Background

Brought pursuant to Family Court Act § 1034, titled "Power to order investigations," the instant application pertains to the Smith family consisting of Mr. and Mrs. Smith and their five children, ages 12, 10, 8, 7 and 3. Petitioner's application for an order of entry into the Smith home set forth:[1]

1. A report of suspected child abuse or maltreatment was made to SCR on July 13, 2009. The report stated that there was concern about ongoing domestic violence in the home involving the father assaulting his wife with the most recent incident occurring several days earlier when the father beat his wife so severely that she required stitches to her forehead. The SCR report set forth the belief that this altercation occurred in the presence of all of the children.

2. On the same date the report was made and again on July 15, 2009, the CPS worker assigned to investigate the SCR report

---

1. Petitioner's application was sworn to and filed on September 8, 2009 by the assigned child protective specialist (hereinafter CPS) worker, approximately two months after commencement of the investigation to determine whether the allegations reported to SCR were founded.

conducted home visits to the case address and left written notes requesting that the parents contact her.

3. On July 20, 2009, Mrs. Smith and her five children went to petitioner's field office and met with the CPS worker. Mrs. Smith, however, "refused to provide any personal information" and would not allow the CPS worker to speak to the children alone or in her presence; the children also refused to speak to the CPS worker. When the CPS worker asked Mrs. Smith if she would agree to schedule an appointment to permit her to conduct a visit to the home, Mrs. Smith replied no because she did not know her.

4. The CPS worker continued to make several more attempts to gain entry into the Smith home through telephone contact and subsequent unannounced home visits. On July 28, 2009, the CPS worker sent a letter advising the parents of their need to cooperate with her investigation.

5. On August 4, 2009, the CPS worker visited the summer camp, which the four oldest children attended, in an effort to interview them; all of the children refused to speak to her. Thereafter, the CPS worker made several more attempts to visit the home and to contact the parents by telephone with no success.

6. On August 24, 2009, the CPS worker made another unannounced home visit and again left a written note for the parents asking them to contact her.

7. On September 2, 2009, the CPS worker made an unannounced home visit and while Mrs. Smith answered the door she did not permit the CPS worker into the home stating, "she was not prepared to receive company." The CPS worker spoke to Mrs. Smith in the hallway and asked her to attend a family conference at her office the next day, September 3, 2009, at 10:00 A.M. Although Mrs. Smith agreed to attend the meeting neither she nor Mr. Smith did so.

8. On September 3, 2009, after the parents failed to attend the family meeting, the CPS worker again conducted an unannounced home visit and left the parents another letter informing them that a child safety conference would be held the next day, September 4, 2009, at 2:30 P.M. The letter advised the parents that if they failed to attend the conference the matter would be referred to Family Court. The parents did not attend the child safety conference on September 4, 2009, nor did they call the CPS worker to provide any excuse for their absence.

9. Petitioner's application also sets forth that the family is known to Kings County Family Court under docket Nos. NN11386/06 through NN11390/06. A finding of neglect was entered against each parent as to their children on September 14, 2006. Further, a final order of protection, prohibiting the use of corporal punishments as to the children, was issued against the parents for a one-year period.

10. The application concludes that, given the SCR report and the steps taken by the CPS worker to conduct the investigation, probable cause exists to believe that an abused or neglected child or children may be found at the premises where the Smith family resides and that an order permitting the CPS worker to enter the home between the hours of 6:00 A.M. and 9:00 P.M. in order to evaluate the home environment of the children should be issued.

This court initially heard petitioner's application on the date it was filed, September 8, 2009. Following a preliminary review of the application, the court noted that it failed to specify who was the source of the report to the SCR. When the court inquired about this missing information, the court learned that the allegations were made to the SCR by an anonymous source. The matter was then adjourned to permit petitioner additional time to personally serve the Smiths with its application[2] and to allow the court the opportunity to review the family's prior neglect case.

Discussion

Petitioner's application for a prepetition ex parte court order is brought under a recently enacted subdivision to Family Court Act § 1034. In 2006, the New York State Legislature amended Family Court Act § 1034 in response to several high profile and tragic child abuse fatalities in order to provide child protective investigators with the tools to properly investigate child abuse/ neglect cases where parents or caregivers refuse to provide child protective investigators access to the child or children or to the home sufficient to make an adequate determination as to the children's safety. (L 2006, ch 740.) As amended, Family Court Act § 1034 grants the Family Court authority to issue prepetition ex parte court orders in ongoing child protective investigations, upon the application of a child protective agency under specifically defined circumstances, to help protect children who might be in immediate danger. (*Id.*)

---

2. Petitioner was unable to effectuate service upon the parents following several attempts to do so.

Hence, Family Court Act § 1034 (2) (a) (i) grants the court authority to issue a prepetition ex parte court order when an investigator has been unable to locate a child named in a report or other children in the household, or has been denied access to the child or children in the household, such that they are unable to determine whether the child or children are safe. Under these circumstances, and upon a showing of "reasonable suspicion" that a child's life or children's lives may be in danger, the court may issue an order directing a parent or caretaker to produce the child or children to a designated location to be interviewed and for observation of their condition outside the presence of the parent or caretaker.

Similarly, Family Court Act § 1034 (2) (b) (i) permits a child protective agency to seek a prepetition ex parte court order to gain access to the home environment during the course of an investigation upon a showing that "probable cause" exists that an abused or neglected child may be found on the premises. In both instances, the investigator is required to inform the parent or caregiver that if they deny the investigator sufficient access to the child or children, or to the home, the investigator may seek an immediate court order for access without further notice. (*See* Family Ct Act § 1034 [2] [a], [b].)

Based upon these recent amendments to Family Court Act § 1034, the issue before this court is whether petitioner's application for a prepetition ex parte court order to gain access to the Smith home in the present case properly falls within the ambit of Family Court Act § 1034 (2) (b) (i) and (ii). The court notes that it found no reported cases to date construing the amendments to Family Court Act § 1034.[3] Thus, the court considers this case one of first impression. As such, the court must determine if petitioner's application establishes "probable cause" that abused or neglected children may be found in the Smith home where petitioner has been denied entry. In so doing, the court must find that the denial of entry to the home renders the CPS worker unable to make an adequate safety determination as to the Smith children.

Family Court Act § 1034 (2) (b) (i) (A), (B) and (C) state, in relevant part:

"Before a petition is filed and where there is probable cause to believe that an abused or neglected

---

**3.** The amendments to Family Court Act § 1034 became effective January 18, 2007.

child may be found on the premises, child protective services may seek a court order based upon:

"(A) a report of suspected abuse or maltreatment under title six of the social services law as well as any additional information that a child protective investigator has learned in the investigation; *and*

"(B) the fact that the investigator has been denied access to the home of the child or children in order to evaluate the home environment; *and*

"(C) the fact that the investigator has advised the parent or other person legally responsible for the child or children that, when denied access to the home environment, the child protective investigator may consider seeking an immediate court order to gain access to the home environment without further notice to the parent or other person legally responsible."

In this case, the petitioner's application meets the three conditions set forth in Family Court Act § 1034 (2) (b) (i) (A), (B) and (C).

Additionally, Family Court Act § 1034 (2) (d) outlines specific factors the court must consider before it issues an order authorizing entry into the home of a child or children named in a report. Family Court Act § 1034 (2) (d) sets forth:

"In determining if such orders shall be made, the court shall consider all relevant information, including but not limited to:

"(i) the nature and seriousness of the allegations made in the report;

"(ii) the age and vulnerability of the child or children;

"(iii) the potential harm to the child or children if a full investigation is not completed;

"(iv) the relationship of the source of the report to the family, including the source's ability to observe that which has been alleged; and

"(v) the child protective or criminal history, if any, of the family and any other relevant information that the investigation has already obtained."

In considering which action is necessary to ensure the safety of the children, the court is called upon to take the action which is least intrusive to the family. (*See* Family Ct Act § 1034 [2] [e].) Further, the statute provides that the court shall be available at

all hours to hear applications for a court order to enter a home where an abused or neglected child or children is expected to be found, and makes clear that the procedure for granting such order shall be the same as for a search warrant and the court order shall specify which action may be taken and by whom. (*See* Family Ct Act § 1034 [2] [f].)

Analysis

Though the legislative amendments to Family Court Act § 1034 were intended to address the circumstance where a parent or caregiver refuses to provide the child protective investigator access to a child or children who are the subject of a report, or entry into the home where an abused or neglected child may be found, the scope of Family Court Act § 1034 is much narrower than petitioner's application suggests. The court reads the scope of Family Court Act § 1034 as balancing the competing rights of parents to be free from unreasonable State intrusion into the integrity of their family against the State interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves. (*See Tenenbaum v Williams*, 193 F3d 581, 610 [1999], citing *Wilkinson v Russell*, 182 F3d 89, 104 [1999].) In providing that a child protective agency must seek a court order for access to enter a home in an ongoing child protective investigation, the Legislature has endorsed the principle that judicial authorization makes a fundamental contribution to proper resolution of the tension among the interests of the child, the parents, and the State. (*Id.*)

Family Court Act § 1034 (2) (b) (i) and (ii) provide that where a child has not been seen or located and there is reasonable suspicion that her life or health is in immediate danger, or where there is probable cause that she may be found in the home, and an assessment of the home environment is necessary to make a determination of whether the child is safe, a child protective agency can seek a prepetition ex parte court order to override the actions of the parent or caretaker in denying the child protective investigator access to the child or to the home.

When seeking a prepetition ex parte court order, the statute requires that the child protective agency make a showing of either "reasonable suspicion" in one instance, or "probable cause" in the other, in order to obtain a court order to compel the production of a child or children, or an order of entry to the home of a family who is the subject of a child protective investigation. As such, prepetition ex parte court orders pursu-

ant to Family Court Act § 1034 should not be sought as a routine practice or solely as a means to induce cooperation from families who are the subject of an investigation. It is well-settled law that parents are under no legal obligation to cooperate with a child protective agency's investigation of them. (*Matter of Vulon*, 56 Misc 2d 19 [Fam Ct, Bronx County 1968].) Instead, Family Court Act § 1034 provides under what circumstances a prepetition ex parte court order may be sought and the burden of proof a petitioner must meet.

The court also notes Family Court Act § 1034 (2) (c) explicitly sets forth that the procedure for granting an order authorizing a child protective investigator to enter the home of a family under investigation shall be the same as the procedure for search warrants under Criminal Procedure Law. The court reads the inclusion of this requirement as further evidence of the legislative intent to strike a balance among the rights and interests of parents, children and the State. In both instances, the burden of showing that probable cause exists is placed on the State. (*See* Family Ct Act § 1034 [2] [f].) Furthermore, though probable cause is a flexible term, which by definition deals with probabilities, in the context of an application for a prepetition ex parte court order for access to enter a home in an ongoing child protective investigation, the court must be satisfied that reasonably trustworthy information has been presented to form an objective basis to believe an abused or neglected child will be found on the premises. (*See Tenenbaum*, 193 F3d 581 [1999].)

Therefore, the instant application for a prepetition ex parte court order seeking entry into the home of the Smith family is required to contain allegations of fact supporting that probable cause exists to believe that an abused child or neglected child or children who are the subject of an SCR report, and to whom petitioner has been denied access, may be found on the premises. (*See* Family Ct Act § 1034 [2] [b] [i].) Here, however, the application is insufficient and fails to meet the probable cause standard the statute requires for the issuance of an order of entry.

The application filed with this court was based on a report to the SCR of "possible domestic violence in the presence of the children." The application did not, however, include that the SCR report had been made by an anonymous source. The court only learned of this information when it inquired about the identity of the source. This relevant information was not

included in petitioner's application even though the statute requires the court to consider the relationship of the source of the report to the family as well as the ability of the source to observe the allegations contained in the SCR report. (*See* Family Ct Act § 1034 [2] [d] [iv].) In the absence of other reliable information, this court finds that an anonymous SCR report alone is insufficient to establish "probable cause" for the issuance of an order of entry in a child protective investigation pursuant to Family Court Act § 1034 (2) (b) (ii).

Of course, allegations of domestic violence in the presence of the children are serious and of particular concern in ensuring the physical safety and emotional well-being of children. Here, however, petitioner's sworn-to application was devoid of any objective basis to believe there was domestic violence occurring in the Smith home. The SCR report alleged that the mother had received stitches to her forehead a few days prior to when the report was made. Yet, the CPS worker was unable to verify that the mother had stitches to her forehead even though she saw her just a few days after the report was made as well as one other time in August when she made an unannounced visit to the home.[4] The CPS worker also informed the court that she had not observed any bruises or marks on the mother during the course of her investigation.

In this case, the mother produced all of the children who were the subject of the SCR report to the agency's field office a few days following the investigator's first visit to the Smith home. Though the mother did not permit the CPS worker to speak to the children and the children refused to speak to the CPS worker, the worker observed that the children were appropriately dressed, free of any visible marks or bruises and, by her own account, the children appeared "well."

Additionally, the CPS worker was able to observe the children on several other occasions between the time when the SCR report was made in July and the time when petitioner filed the instant application in September 2009. The CPS worker observed the four older children at their summer camp on at least two occasions and on one occasion at the school they attend. While the children remained steadfast in their refusal to speak to the CPS worker, even though they were outside of the

---

4. When the court inquired about the alleged stitches to the mother's forehead, the CPS worker indicated that the mother wore thick bangs across her forehead, which prevented her from actually seeing whether or not the mother had stitches to her forehead.

presence of their mother, the children were consistently observed to be free of bruises and marks, dressed appropriately and appearing well. Indeed, when the CPS worker inquired of the staff at the summer camp as well as the school personnel about the children, none reported having any concerns about the children's safety or well-being.[5]

The fact that the Smith family is known to petitioner and the Family Court because they have a child protective history, standing alone, is also insufficient to establish "probable cause" for the issuance of a prepetition ex parte court order to gain entry into their home in regards to a new child protective investigation unrelated to the earlier child protective proceeding. Even if the court takes into account Family Court Act § 1046, which permits the court to consider proof of a prior finding of neglect at a subsequent child protective hearing, a prepetition ex parte application is by definition a one-sided presentation of allegations and thus is not a "hearing." Therefore, while the statute requires the court to consider the child protective or criminal history of a family, such history cannot be proffered as the sole basis for seeking a prepetition ex parte court order to gain entry into their home in connection with a new investigation commenced by an anonymous report to the SCR three years later. (*See* Family Ct Act § 1034 [2] [d] [v].)

Further, petitioner's application for an order of entry permitting the CPS worker to enter the home between the hours of 6:00 A.M. and 9:00 P.M. is overly broad and contravenes the requirements of the statute. In cases where the court is satisfied that probable cause does exist to issue a prepetition ex parte court order of entry to a home in an ongoing child protective investigation, the statute makes clear that the order must specify which action may be taken and by whom. (*See* Family Ct Act § 1034 [2] [f].)

In sum, petitioner's Family Court Act § 1034 application, together with the additional information presented in response to inquires made by the court, fails to establish "probable cause" for the issuance of an order of entry. No objective basis

---

5. Additional information not contained in petitioner's application became available as a result of inquiries the court made on the record concerning the scope of the investigation. Thus, the court learned that the CPS worker visited the children's summer camp twice in August and the children's school in September shortly after the application was filed on September 8, 2009. The court notes that both the summer camp staff and the school personnel are mandated reporters pursuant to Social Services Law § 413.

has been presented to the court to show the CPS worker's investigation cannot be completed because she needs to examine the home environment in order to make an adequate determination that the children are safe. Instead, on multiple occasions, the CPS worker confirmed that the children were appropriately groomed and dressed and appeared well. They were attending summer camp and attending school with no reports or concerns raised by any of the mandated reporters, who interacted with the children on an almost daily basis and to whom the CPS worker spoke during the course of her investigation.

Moreover, the family's refusal to permit the CPS worker into the home cannot be the sole basis for an order of entry into the home. The intent of the amendments to Family Court Act § 1034 as well as the plain language of the statute is to provide child protective investigators the tools they need to complete investigations where there is reason to believe a child's life or health is in immediate danger, or where probable cause exists that a neglected or abused child may be found in the home and an assessment of the home environment is necessary to make an adequate determination that the child is safe. Here, petitioner's application does not involve children who have not been seen or located, or involve the circumstance where there is any reason to believe their life or health are in immediate danger, or offer any reason for the necessity to assess the home environment to determine their safety. Thus, petitioner failed to establish the existence of "probable cause" that neglected or abused children would be found on the premises of the Smith home.

Conclusion

Based on the foregoing, the court finds that petitioner's application fails to satisfy the requirements set forth in Family Court Act § 1034 for the issuance of a court order of entry into a home subject to an ongoing child protective investigation.

Accordingly, the application is denied in its entirety.